UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

MIRIAM GOMBOSH

    Plaintiff,

v.

UNIVERSITY OF MIAMI
    Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff, MIRIAM GOMBOSH (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, and hereby sues Defendant, UNIVERSITY OF MIAMI (hereafter referred to as "Defendant") and as grounds alleges:

### JURISDICTIONAL ALLEGATIONS

1. This is an action to recover monetary damages, liquidated damages, interest, costs, and attorney's fees for willful violations of the American with Disabilities Act of 1990, 42 U.S.C. Sec. 1211, et seq. ("ADA") and the Families First Coronavirus Response Act ("FFCRA") which is enforced through §§ 15(a)(3), 16 and 17, of the FLSA, 29 U.S.C. Sect. 216-217, (*see* C.F.R. § 826.150) and the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, et seq. ("FCRA") to redress injuries resulting from Defendant's unlawful, disability-based discriminatory of and retaliation against Plaintiff.

### PARTIES

2. Plaintiff, MIRIAM GOMBOSH, is an adult, female resident of Miami-Dade County, Florida.

3. Defendant, UNIVERSITY OF MIAMI, is a Florida Not-For-Profit Corporation authorized to conduct business in the State of Florida and in Miami-Dade County, Florida.

4. At all times material hereto, Plaintiff is an "employee" within the meaning of the ADA 42 U.S.C. Sec. 1211, *et seq*.

5. At all times material hereto, Defendant is an "employer" within the meaning of the ADA 42 U.S.C. Sec. 1211, *et seq*.

6. At all times material hereto, Defendant is subject to the FFCRA enforced through the FLSA.

7. At all times material hereto Plaintiff was an "employee" within the meaning of Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01, et seq.

## JURISDICTION AND VENUE

8. This Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§131, 1343, and 1367.

9. Venue is proper because the events/employment practices alleged in this Complaint to be unlawful were committed in Miami-Dade County, within jurisdiction of this Honorable Court.

10. Plaintiff filed a charge of discrimination against Defendant with the Equal Opportunity Commission (hereafter referred to as "EEOC") and the Florida Commission on Human Relations (hereafter referred to as "FCHR").

11. Plaintiff files this complaint within 90 days after receiving a Notice of Right to Sue from the EEOC.

12. All conditions precedent for the filing of this action before this Honorable Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## **FACTUAL ALLEGATIONS**

13. On or about November 30th, 2009, the Plaintiff began working for the Defendant as a Nurse Practitioner for Dr. Bach Ardalan and worked for Dr. Ardalan during her entire time of the Plaintiff's employment with the Defendant.

14. The Plaintiff worked in the Department of Medicine at the clinic in the Sylvester Cancer Center. The Plaintiff worked with the cancer patients as directed by the Defendant.

15. The Plaintiff worked in a cubicle on the 2nd floor for several years. The Plaintiff was then moved to another building between the year 2009 and 2010 called the Sylvester Medical Office Building.

16. Clinical days included Mondays, Tuesdays, and Thursdays, whereas office days included Wednesdays, and Fridays.

17. On or around the Fall of 2019, the Defendant attempted to double the workload of the Plaintiff and the Plaintiff explained to the Defendant that the Plaintiff had a hefty workload with Dr. Ardalan and had been suffering from depression and severe anxiety that gave the Plaintiff awful chest pains. The Plaintiff also suffered from arrhythmia, depression, and an eating disorder that all become affected by anxiety. The Defendant told the Plaintiff that the Plaintiff is not the only one stressed. Later on, the Plaintiff heard the supervisor mocking the Plaintiff because Plaintiff was monitoring her own arrythmia on the Plaintiff's own apple watch. The Plaintiff also suffered from moderate to severe asthma, along with sinusitis resulting from allergies.

18. On or around April of 2020, right after the Pandemic closed America, for the first time in the Plaintiff's time of working with the Defendant, the Plaintiff's evaluation was downgraded from exceeds expectations to expectations met.

19. During the year of 2020, the Defendant created a hotline for COVID-19 for employees such as the Plaintiff to report a COVID-19 positive diagnosis.

20. On the office building, the Plaintiff's cubicle was located to the left of the elevator, down a hallway of a row of other cubicles, then a block of cubicles. Her cubicle was in the block, first one on the right. The Plaintiff has a cubicle directly next to her and directly in front of her. The cubicle next to her was Alisset Navea and the cubicle in front of her was supposed to be Dora Fayad who is the secretary, but Fayad worked from home due to chemotherapy.

21. On or around February or March 2020, Jose Avqueta who is the Plaintiff's scribe occupied the cubicle in front of the Plaintiff.

22. In or around May of 2020, the Defendant directed the Plaintiff to be tested for COVID-19 and the Plaintiff tested negative.

23. On or around June 30, 2020, the Plaintiff did not go to work because the Plaintiff had to take her son to the University of Miami dermatology appointment.

24. On or around July 2nd, 2020, the Plaintiff learned from coworkers in the Plaintiff's office that a copy repair man was operating in the Plaintiff's office who was infected with COVID-19. There was gossip and whispering about the COVID-19 positive repair man and staff members were in a state of panic.

25. The Plaintiff used and operated the copy machine and the office, and the copy machine was not sanitized after the person infected with COVID-19 was present in the office and working on the very same copy machine.

26. On or around July 4th, 2020, Independence Day of 2020, the Plaintiff began having breathing problems. The Plaintiff also suffered from a fever and muscles aches which is consistent with COVID-19 contraction.

27. The Plaintiff does have history of asthma and sinusitis; however, the Plaintiff being a Nurse Practitioner and patient of asthma and sinusitis knows the difference in symptoms between asthma, sinusitis, and a COVID-19 contraction. The Patient knew her symptoms were not caused by asthma or sinusitis.

28. On or around July 7th, 2020, the next working day, the Plaintiff called the hotline that was created by the Defendant to report COVID-19 symptoms.

29. On or around July 8th, 2020, the Plaintiff was tested for COVID-19 and tested positive for COVID-19.

30. On or around July 2020, the Plaintiff's supervisor was Christina Herrera who was hired by Karen Stephenson.

31. The Plaintiff notified her supervisor Christiana of the Plaintiff's COVID-19 positive test.

32. The Plaintiff notified Dr. Ardalan of the Plaintiff's COVID-19 positive test.

33. On or around July 9th, 2020, the Plaintiff's father who also works at the Sylvester Cancer Center at the information desk tested positive for COVID-19.

34. On or around July 14th, 2020, Dr Donna ordered a chest X-Ray for the Plaintiff and the X-Ray revealed Pulmonary Edema due to COVID-19 contraction. Moreover, the Plaintiff suffered long term effects of COVID-19 such as muscle aches.

35. Dr. Donna the who is the Plaintiff's Pulmonologist and Dr. Suarez who is the Plaintiff's primary care physician wrote letters to the Defendant asking the Defendant to allow the Plaintiff to work from home as much as possible due to the effects COVID-19 was having on the Plaintiff.

36. The Plaintiff was unable to return to work until August 31, 2020.

37. On or around July 14, 2020, the Plaintiff received her negative COVID-19 test.

38. On or around July 17, 2020, the CDC guidelines changed to where children are not required to be tested for the employee to return to work; however, the Defendant through her supervisor requested the Plaintiff's children be tested for COVID-19 prior to the Plaintiff returning to work.

39. The Defendant did not have an adequate screening process for COVID-19 because the screening process were self-questions and there was no objective test such as thermometer check. One patient denied having COVID-19 but her scan showed signs of COVID-19 contraction and later tested positive for COVID-19. The Plaintiff said that patient she is not coughing and then that patient started to cough because that patient had been holding the cough in to disguise that patient's COVID-19 symptoms.

40. There were many employees for the Defendant who did follow COVID-19 safety procedures and there was no enforcement by the Defendant.

41. There were many patients who were infected with COVID-19 and did not wear masks.

42. Nurse Practitioner Marisol contracted COVID-19 and there were no staff notification or an email to the staff that a staff member contracted COVID-19.

43. The only time the Defendant notified the staff of a COVID-19 positive employee was when the Plaintiff was positive for COVID-19 and a memo notification was sent via email to the staff.

44. The employees in the office where the Plaintiff worked were never notified regarding the copy repair man being COVID-19 positive; however, the employees in the office where the Plaintiff worked were notified when the Plaintiff tested positive for COVID-19.

45. The Plaintiff's coworker Veronica also tested positive for COVID-19; Veronica who is a registered nurse worked with the clinic but not in the office with the Plaintiff.

46. Veronica tested positive for COVID-19 around the same time as the Plaintiff tested positive for COVID-19.

47. On or around August 5th, 2020, the Plaintiff's son Graham had symptoms of COVID-19 and tested positive for COVID-19. The Plaintiff's son Graham has a preexisting condition of congenital heart defect called cardiomyopathy and always taking antibiotics. The Plaintiff informed her supervisor Christina about the Plaintiff's son being COVID-19 positive and Christina suggested the Plaintiff email Human Resources to request FMLA for family medical leave; however, Humana Resources of the Defendant did not respond to the Plaintiff.

48. On or around August 31, 2020, the Plaintiff returned to work.

49. On or about September 18th, 2020, during a Zoom meeting between the Plaintiff and her manager, the Plaintiff was told by her manager that the Defendant was terminating because Plaintiff had COVID-19 and due to budget issues.

50. Plaintiff received a letter from the Defendant stating the Plaintiff was relieved of employment with the Defendant due to the impact COVID-19 had on the Defendant.

51. Since her termination by the Defendant, the Plaintiff has not received unemployment benefits, short term disability, and has not received worker's compensation.

52. The Plaintiff has filed an EEOC claim against the Defendant and does have a lawsuit for wrongful termination by the Defendant.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

53. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-55 above as is set out in full herein.

54. Plaintiff is a member of a protected class under the ADA.

55. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's perceived disability and subjected Plaintiff to disability-based animosity.

56. Such discrimination was based upon the Plaintiff's perceived disability in that the Plaintiff would not have been the object of discrimination but for the fact of her medical condition.

57. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's perceived disability was unlawful but acted in reckless disregard of the law.

58. At all times material hereto, the employees exhibiting discriminatory conduct towards the Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

59. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

60. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

61. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

62. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

63. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

64. The American with Disabilities Act, 42 U.S.C. Sec. 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability or perceived disability "in regard to job application procedures, the hiring, advancement, or discharge or employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. Sec. 12112.

65. Plaintiff was fully qualified to be employed by Defendant and could perform all the essential function of the position held with Defendant.

66. Defendant is a covered employer to which the ADA applies.

67. Defendant discharged Plaintiff from employment because of Plaintiff's perceived disability.

68. Defendant made no individualized assessment to determine whether Plaintiff could perform the essential functions of the job and be employed by Defendant, or whether a reasonable accommodation would enable her to be employed by Defendant, as required under the ADA.

69. Defendant's discharge of Plaintiff on the basis of her perceived disability and Defendant's failure to make an individualized assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable her to be employed by Defendant violated the ADA.

70. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the ADA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
## VIOLATION OF THE FFCRA

71. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-55 above as is set out in full herein.

72. The FFCRA mandates covered employers to provide up to two (2) weeks of paid leave and job protection for employees who, among other things are (1) subject to a governmental quarantine or isolation order related to COVID-19 or (3) are experiencing COVID-19 symptoms and are seeking a medical diagnosis.

73. The FFCRA prohibits employers from discharging, disciplining, or otherwise discriminating against any employee who takes paid sick leave under the FFCRA.

74. The provisions of the FFCRA apply to leave taken between April 1, 2020 and December 31, 2020.

75. Plaintiff was entitled to up to two weeks of paid sick leave pursuant to the FFCRA because she was experiencing COVID-19 related symptoms awaiting a medical diagnosis.

76. Yet, Defendant blatantly disregarded its obligations under the FFCRA and terminated her.

77. Defendant's violation of the FFCRA was willful.

78. As a direct and proximate result of Defendant's violation of the FFCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the FFCRA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA

79. Plaintiff re-alleges and re-affirms Paragraphs 1-55 as is it is fully set forth herein.

80. Plaintiff is a member of a protected class under the ADA.

81. By the conduct described above, Defendant retaliated against Plaintiff for exercising rights protected under the ADA.

82. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's disability was unlawful but acted in reckless disregard of the law.

83. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

84. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent

continued discrimination against the Plaintiff, deprived Plaintiff of statutory rights under federal law.

85. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others from such action in the future.

86. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices and until this honorable Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the ADA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV
## RETALITION UNDER THE FFCRA

87. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-55 above as is set out in full herein.

88. The FFCRA prohibits employers from discharging or otherwise discriminating against any employee because the employee qualified and/or took qualifying paid sick leave.

89. Despite the FFCRA's requirements, Defendant unlawfully terminated Plaintiff after she took leave as a result of symptoms and possible COVID-19 diagnosis.

90. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the FFCRA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT V
## RETALIATION IN VIOLATION OF THE FCRA

91. Plaintiff re-alleges and re-affirms Paragraphs 1-55 as is it is fully set forth herein.

92. Plaintiff is a member of a protected class under the FCRA

93. By the conduct described above, Defendant retaliated against Plaintiff for exercising rights protected under the FCRA

94. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's disability was unlawful but acted in reckless disregard of the law.

95. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

96. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived Plaintiff of statutory rights under federal law.

97. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others from such action in the future.

98. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices and until this honorable Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree the Defendant has violated the FCRA, and has willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Respectfully submitted

GALLARDO LAW OFFICE, P.A.
8492 SW 8th Street
Miami, Florida 33144
Telephone: (305) 261-7000
Facsimile: (305) 261-0088

By: _____
Elvis J. Adán, Esq.
Fla. Bar No.: 24223